```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

United States of America

    v.                              Case No. 2:04-cr-134

Roger D. Blackwell, et al.

<u>STATEMENT OF FINDINGS REGARDING THE ADMISSIBILITY
          OF CO-CONSPIRATORS' STATEMENTS</u>

      The government seeks to introduce evidence of out-of-court statements consisting of the testimony of various defendants in proceedings conducted by the Securities and Exchange Commission. The government asserts that these statements are admissible as the statements of co-conspirators, under Rule 801(d)(2)(E), of the Federal Rules of Evidence, on the grounds that they are statements of co-conspirators made during the course of and in furtherance of the conspiracy.  In order to determine the admissibility of such statements, the court must decide whether the government has proved by a preponderance of the evidence that there was a conspiracy between the declarant and the non-offering party, and that the statement was made in the course of and in furtherance of the conspiracy.  <u>Bourjaily v. United States</u>, 483 U.S. 171 (1987).

      The government alleges in Count 23 of the indictment that defendants Blackwell, Hughes, Stacy, Jack, Voss, and unindicted co-conspirators B & C, conspired to evade and obstruct the investigation of trading in the stock of Worthington Foods, prior to the October 1, 1999, public announcement of the Kellogg/Worthington Foods merger agreement, and to make false statements to the SEC.  Unindicted co-conspirators B & C are Blackwell's father, Dale Blackwell, and his son, Christian Blackwell.

The court finds that the government has established by a preponderance of the evidence that such a conspiracy did exist and that defendants Blackwell, Hughes, Stacy, Jack and Voss were members of said conspiracy.  The court is unable to find by a preponderance of the evidence that unindicted co-conspirators B & C were members of the conspiracy.

In reaching these conclusions, the court has carefully considered all of the evidence introduced to date, as well as the evidence contained in the proffered statements made by the defendants in the SEC proceedings.  The court finds that the government has essentially proved by a preponderance of the evidence everything that it said it would prove in its opening statement regarding the existence of a conspiracy to obstruct the SEC proceeding and to make false statements.

The evidence supports a finding that defendants Blackwell, Hughes, Stacy, Jack and Voss engaged in insider trading and that they were members of a conspiracy to engage in insider trading.  In other words, the evidence supports a finding that there was illegal conduct to be concealed and that there is a factual predicate for the object of the conspiracy to obstruct the SEC proceeding and to make false statements, namely the concealment of insider trading through the making of false statements and the concealment of facts.  In making this determination, the court finds that the testimony of the government witnesses Christina Stephan Blackwell, and Jack Kahl was credible and that their testimony together with substantial circumstantial evidence supports such findings.

The government's evidence indicates that defendant Blackwell shared insider information with his wife, her parents, and his good

friend, Mr. Kahl.  It can be inferred that he did so with other close friends and associates, including his oldest friend, Mr. Voss, his longtime friend and business partner, Mr. Jack, as well as his good friend and employee, Ms. Hughes and her husband, Mr. Stacy.  This would be the most logical explanation for the fact that they were among the highest volume individual purchasers of Worthington Foods stock in the United States during the months preceding the merger.  The evidence that there was frequent communication between these individuals during the months immediately preceding the merger and/or many opportunities for such communication also supports the allegations of insider trading.

The alleged conspiracy to engage in insider trading was concluded when the price of Worthington Foods stock doubled upon the public announcement on October 1, 1999.  The evidence indicates that the conspiracy to obstruct the SEC proceeding and to make false statements was conceived and formed soon thereafter.

On October 1, 1999, defendant Voss was informed by his stockbroker that his trading in Worthington Foods would be investigated.  Shortly thereafter, on October 3, 1999, Voss called Blackwell, and they had a twenty-nine-minute telephone conversation.  This supports a finding that the alleged conspiracy to obstruct the SEC proceeding and to make false statements began on or about October 3, 1999.  The telephone conversation with Voss was followed by Ms. Hughes' internet research of Worthington Foods on October 4, 1999, suggesting that this was the beginning of the conspirators' efforts to construct reasons other than an insider tip for purchasing Worthington Foods stock.  It can be inferred that after-the-fact internet research was most likely the  source

of the information contained in a letter Blackwell sent to Kahl and others on or about January 27, 2003, in which Blackwell purportedly clarified the facts regarding the allegations of insider trading. If Kahl is believed, and his testimony was credible, there was no reason for Blackwell to send such a letter to him.  There would be nothing to clarify because Blackwell would have known exactly where Kahl obtained his information regarding Worthington Foods.  The only purpose for sending such a letter to Kahl would be to inform him of facts he could use to explain his purchase of Worthington Foods to the SEC investigators.  It can be inferred that Blackwell likely sent such a letter to the other co-conspirators, including defendants Jack, Voss, Hughes and Stacy.

The existence of a conspiracy to cover up insider trading is supported by Blackwell's failure to directly respond to NASD inquiries about a list of names which included Voss, Kahl, and his wife's parents, the Stephans.  Similar activity involved deleting the names of Voss, Kahl, and the Stephans from the Roger Blackwell & Associates client contact database before responding to the SEC subpoena, which requested production of business records.  When confronted by Mary Hiser about the deletion of this information, Blackwell responded "I'll take care of it," hardly the response of someone who was shocked or surprised by the revelation that these deletions occurred.

Mary Hiser testified that when she called Blackwell immediately after learning that her mother had been subpoenaed by the SEC, he said he was aware that others had been subpoenaed, indicating the probability of communications between Blackwell and the other individuals who had been subpoenaed, which included Voss,

4

Jack, Hughes and Stacy.  Hiser also testified that in a subsequent conversation, Blackwell indicated awareness of what Voss had told the SEC in his testimony, suggesting there was communication between Blackwell and Voss about Voss's testimony.  Voss talked to his friend, Mr. Sullivan, about the SEC investigation and told him that others were being investigated, suggesting that Voss was in communication with others who had been subpoenaed by the SEC.

In his SEC testimony given in January, 2001, Blackwell testified that he did not know if Stacy had purchased shares of Worthington Foods.  Blackwell knew, however, that both Stacy and Hughes had been subpoenaed by the SEC and that they were targets of the SEC investigation because they had purchased Worthington Foods stock.  This is additional evidence of Blackwell's membership in the alleged conspiracy, and constitutes a false statement in furtherance of the conspiracy.

Jack's involvement in the conspiracy to obstruct the SEC proceeding and to make false statements is supported by substantial circumstantial evidence regarding his close relationship with Blackwell, the fact that they communicated during the period of the SEC investigation, and their opportunity for frequent communication during that time.  Jack's denial that he knew Blackwell was on the board of Worthington Foods is hard to believe in view of the closeness of their relationship, his substantial purchases of the stock for himself and Blackjack Enterprises in September, 1999, and the fact that Jack would have received Worthington Foods' annual reports as a shareholder during his ownership of Worthington Foods stock which he sold in 1994.  Blackwell had been on the board ever since the company went public in the early 1990's.  He was an

active promoter of the company's products.  He served them at parties and cookouts and he featured the company in his books and lectures.  The evidence is sufficient to show that Jack knew Blackwell was on the board of Worthington Foods, and that his statement to the contrary was false.

Defendant Jack's testimony that his September, 1999, meeting with Blackwell at the Grand Hotel in Monte Carlo was a coincidence strains credulity in light of the fact that Blackwell paid for Mr. and Mrs. Jack's trip to Europe with his frequent flyer points. Jack's failure to acknowledge in his SEC testimony that his telephone records for September 7, 1999, showed that he placed a call to his stockbroker to purchase Worthington Foods stock immediately after finishing a telephone conversation with Blackwell's office on that date is further evidence of Jack's participation in the alleged conspiracy.  Jack, an active trader, would certainly have recognized the phone number of Dick Evans, who had been his friend and broker for over thirty years.  It would be reasonable to conclude from the evidence that Jack's SEC testimony was false and in furtherance of the conspiracy.

Voss's version of his twenty-nine-minute telephone conversation with Blackwell on October 3, 1999, his relationship with Blackwell, the known contacts between them, and the many opportunities for other contacts between them all support a finding that Voss was a member of a conspiracy to obstruct the SEC proceeding and to make false statements.  In his testimony about the October 3, 1999, telephone conversation, Voss waffled on the question of whether he even told Blackwell that he had purchased Worthington Foods stock.  First he said he did tell Blackwell, but

6

after some coaching by his counsel, he finally said that he only inferred that he had done so, but that Blackwell should have known it by the "joy in his voice." Voss knew that Blackwell was a director of Worthington Foods, and he admitted discussing the stock of Worthington Foods with Blackwell only months before. It is difficult to believe that in a conversation with his lifetime friend, Voss would not have mentioned that he had just made almost half a million dollars as a result of purchasing Worthington Foods stock. It is also difficult to believe that, instead of discussing his profits and the warning Voss received from his stockbroker that his trading in Worthington Foods would be investigated, he and Blackwell discussed the fall foilage in New England. In short, it is reasonable to infer that Voss's testimony was a false statement by a member of the conspiracy in furtherance of the conspiracy.

The SEC testimony of Hughes and Stacy, their failure to produce the records of their trading in Worthington Foods stock in September 1999, their close business and social relationship with Blackwell, and Hughes' participation in generating after-the-merger research all support a finding that they, too, were members of a conspiracy to obstruct the SEC proceeding and to make false statements.

The court has reviewed the designated portions of the SEC testimony of defendants Blackwell, Jack, Voss, Hughes and Stacy sought to be admitted, and has determined that certain portions of their testimony are admissible as co-conspirators' statements under Fed.R.Evid. 801(d)(2)(E). The court designated which portions of the testimony were admissible in its rulings made during the reading of the testimony at trial on May 31, 2005, and June 1,

2005.  In making these determinations, the court has considered these co-conspirators' statements as well as other independent, corroborating evidence of the existence of the conspiracy and of the defendants' knowledge of and participation in the conspiracy. The court finds that the government has shown by a preponderance of the evidence that the conspiracy alleged in Count 23 of the indictment existed, as charged, and that defendants Blackwell, Jack, Voss, Hughes and Stacy were members of that conspiracy, having knowingly and intentionally joined the conspiracy with knowledge of and agreement with the objects of the conspiracy.  The court further finds that the government has also shown by a preponderance of the evidence that these portions of SEC testimony were made during the course of the alleged conspiracy to obstruct justice by obstructing the SEC proceeding and making false statements, of which the defendants were then members, and that they were made in furtherance of that conspiracy.

    The court emphasizes that the purpose of these rulings is solely to determine whether the government has made the preponderance showing necessary for the admissibility of the proffered statements as co-conspirators' statements under Rule 801(d)(2)(E), as required under <u>Bourjaily</u>.  These findings are necessarily made on a record which consists only of the government's evidence, and nothing in this opinion should be construed as a finding on the ultimate question of guilt or innocence.  The jury, not the court, will ultimately decide, based upon all of the evidence offered in the case, what weight and credibility, if any, to attach to the government's evidence, including the co-conspirators' statements, and whether the government has proved any of the charges contained in the indictment beyond a reasonable doubt.

Date: June 1, 2005                        s\James L. Graham
                                   James L. Graham
                                   United States District Judge