```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

United States of America

    v.                              Case No. 2:04-cr-134

Roger D. Blackwell, et al.

OPINION AND ORDER

This matter is before the court on defendant Blackwell's motion pursuant to Fed.R.Crim.P. 33 for a new trial based on newly discovered evidence. Defendants Hughes and Stacy have moved to adopt the motion filed by defendant Blackwell. (Docs. #208 and 209). The motions to adopt are granted.

Defendant Blackwell's motion refers to an article which appeared in the December 2005 issue of Columbus Monthly. That article states that a juror in defendants' trial sent an e-mail to the magazine, stating, "Mr. Blackwell lied under oath on the witness stand" and "I am still at a loss when I try to understand what the motivation was behind Mr. Blackwell's actions." See Motion, Exhibit A. The article goes on to state that in a subsequent telephone interview, the juror related that three jury members saw Blackwell mouth "I hate you" to Tina Stephan, his ex-wife, while she was on the witness stand. Defendant Blackwell subsequently took the stand and denied doing so. According to the juror, when the jury members began discussing Blackwell's denial during deliberation, "his fate was virtually sealed from my perspective." The juror further stated that the jury found the testimony and evidence to be "pretty straightforward" and that they took two and a half days to reach a verdict because they "wanted to make sure to examine everything." The juror also indicated that

she and the other members of the jury "found Jack Kahl's testimony compelling." The juror concluded by stating, "It just seems amazing that somebody so well educated and familiar with the workings of the world would do something like this."

Defendant Blackwell now argues that the jury's reliance on the alleged lip reading by members of the jury resulted in his being convicted on the basis of evidence not in the record in violation of his Fifth Amendment rights. He further argues that the government should not have been permitted to cross-examine him concerning the incident because it did not constitute intimidation and because the government introduced no other evidence concerning the incident. He also contends that the government's cross-examination violated his Sixth Amendment right to confront witnesses.

A district court has discretion when deciding whether to grant or deny a motion for a new trial under Rule 33. A defendant requesting a new trial on the basis of newly discovered evidence must demonstrate the following:

> (1) the evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal.

United States v. Glover, 21 F.3d 133, 138 (6th Cir. 1994)(quoting United States v. O'Dell, 805 F.2d 637, 640 (6th Cir. 1986)). Motions for a new trial based on newly discovered evidence are "disfavored." Id.

The arguments about the propriety of the government's cross-examination of defendant Blackwell about his alleged actions and the confrontation argument are not newly discovered evidence. The

alleged statement by defendant Blackwell was mentioned by counsel for the government during the trial.  <u>See</u> Transcript, pp. 478-480. Government counsel argued that defendant's actions of looking at Ms. Stephan with "a mean face" and stating "I hate you" tended to intimidate the witness and make the witness reluctant to testify. Transcript, p. 479.  The court indicated, "I did not witness such behavior on the part of Mr. Blackwell, but it was reported to me." The court then advised counsel for all parties that it was improper to attempt to intimidate a witness by facial expressions or any other manner or gesture, and that the court would issue a contempt order if it occurred again.  Transcript., p. 479.  Government counsel then stated that the alleged incident occurred while counsel and the court were at a sidebar conference, and that he was unaware it had occurred until it was brought to his attention at the end of the day.  Transcript, p. 480.  The court responded, "If you want to pursue it further, I'll be happy to hear evidence about it and do whatever is necessary.  So I'll let you consider whether you want to do that."  The court further indicated that if the government wished to invoke the court's assistance in regard to this matter, the court would schedule time outside of the trial to hear more about it.  Transcript, p. 480.

The cross-examination of defendant Blackwell also occurred during the trial.  Prior to proceeding with this line of inquiry, government counsel asked for a sidebar conference and indicated that he intended to cross-examine defendant Blackwell about the reported incident.  Transcript, p. 3516.  Defense counsel argued that the inquiry was based on speculation.  However, the court stated,

> I think there is a factual basis for the questions. It was reported to me that gestures, facial expressions, and mumbling of some words–and I think there was obviously a change in the positioning of the witness [meaning the defendant] in the courtroom by his counsel after this was reported. So there is a factual basis, I believe, and you can ask him.

Transcript, p. 3517.

Counsel then entered their objections to the line of questioning. Transcript, p. 3518. Counsel for defendant Blackwell objected, noting that the court gave the government an earlier opportunity to proffer the information into the record and they did not do so. The court stated,

> Anything that bears upon this witness's credibility is proper, and if he made improper gestures in the courtroom or tried to intimidate the witness, he can be asked about that. I don't know what he's going to say, but I think there's a sufficient basis for the question. It was reported to me by numerous people in the courtroom that this is what happened, so....

Transcript, p. 3519. Defense counsel sought no further clarification from the court concerning the source of the court's information. They also never asked the court to compel the government to reveal its source for the information so that they could question the government's source or call this person as a witness.

The government asked defendant Blackwell whether he tried to intimidate his ex-wife during her direct examination, and he stated, "No, I didn't try to intimidate her." Transcript, p. 3519. He denied that he attempted to bully and intimidate his ex-wife during a sidebar conference in an effort to keep her from telling the truth. He also denied mouthing the words "I hate you" to his ex-wife. Transcript, p. 3520. He acknowledged that he might have

4

glared at her at some times. Transcript, p. 3521. The government presented no other testimony concerning the incident. The defendants presented no witnesses on this point.

Defendants' arguments concerning the propriety of the cross-examination and the alleged denial of confrontation of witnesses are amplifications of the objections which were made during the trial. They concern matters which arose and were addressed during the trial. As such, they are not grounds for a new trial based on newly discovered evidence. These arguments were not included in defendants' previous motion for a new trial, and they are not timely made under Fed.R.Crim.P. 33(b)(2)(motions for a new trial based on grounds other than newly discovered evidence must be filed within seven days after the verdict). Therefore, defendants' motions for a new trial on these grounds are denied. However, since the defendants objected to the government's cross-examination at trial, the court will explain its reasoning for permitting the cross-examination.

It is well established that threats made against government witnesses constitute evidence of spoliation. See United States v. Fortson, 194 F.3d 730, 737 (6th Cir. 1999)(evidence that defendant threatened a witness is generally admissible because it is probative of consciousness of guilt.) "It is reasoned that threats against a witness constitute an effort by the defendant to tamper with the substance of the government's case, and thus are probative of a defendant's awareness that the government is likely to prevail at trial." United States v. Copeland, 321 F.3d 582, 597 (6th Cir. 2003). "The fact that defendant attempted to ... threaten an adverse witness indicates his consciousness that his case is a weak

5

or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit." United States v. Mendez-Ortiz, 810 F.2d 76, 79 (6th Cir. 1986)(quoting II Wigmore EVIDENCE, § 278 (Chadbourn rev. 1979)). Further, because spoliation evidence tends to establish consciousness of guilt without any inference as to the character of the spoliator, its admission does not violate Fed.R.Evid. 404(b). Id.

In allowing threat evidence, courts have applied the same standard to threats occurring inside and outside the courtroom. United States v. Gatto, 995 F.2d 449, 454 (3d Cir. 1993). See Gatto, 995 F.2d at 454-55 (testimony of prosecution witness concerning defendant looking at him during trial held proper, noting that it was for the jury to decide whether defendant's conduct revealed his state of mind); United States v. Maddox, 944 F.2d 1223, 1230 (6th Cir. 1991)(government witness properly permitted to testify that defendant mouthed the words "you're dead" to her while she was on the stand); United States v. Mickens, 926 F.2d 1323 (2d Cir. 1991)(permitting prosecution witness to testify that defendant made a hand gesture in the shape of a gun when the witness entered the courtroom. The words "I hate you" could reasonably be considered as an attempt to intimidate the witness or influence her testimony.

It is also proper for the government to cross-examine the defendant concerning alleged threats to a witness. United States v. Alberti, 470 F.2d 878, 882 (2d Cir. 1973). It is not proper for the government to attempt to create an impermissible suggestion of threats where no basis exists for asking the questions, and the government, if confronted with a demand for an offer of proof, must

6

provide some good faith basis for questioning the defendant. See United States v. Rodney, 999 F.2d 541 (table), 1993 WL 280328 (6th Cir. July 26, 1993).

In this case, the court indicated on the record that it was satisfied that the government had a sufficient factual basis, as the court had received reports concerning the alleged incident. Defense counsel never requested additional information concerning the court's reasoning. The court now wishes to clarify for the record that the court did not receive any communications from any of the jurors in this case concerning this matter. The court received information from a reliable member of the court's staff, who was in a position to observe defendant Blackwell at the time, who reported observing defendant Blackwell mouth the words "I hate you" to Ms. Stephan while she was on the stand.

The government's cross-examination of defendant Blackwell in regard to this incident was proper and had an adequate basis in fact. Defendants' argument that the government had no factual basis for its questions and was simply trying to improperly raise an adverse inference through its questions is not well taken. Defendant argues that, even assuming the statement was made, there are other ways besides consciousness of guilt to construe the statement. Defendant Blackwell could have admitted making the statement (if he in fact made it) and could have then offered some explanation for making the statement, including a denial of any intent to intimidate the witness. Instead, he denied making the statement. Defendants' arguments that the jury was invited to draw the adverse inference solely from the government's questions are not well founded. This court instructed the jury in its charge at

7

the conclusion of the case that the questions of counsel are not evidence.  As a general rule, jurors are presumed to follow cautionary instructions.  <u>United States v. Tines</u>, 70 F.3d 891 (6th Cir. 1995); <u>United States v. Sivils</u>, 960 F.2d 587 (6th Cir. 1992).

The government did not act improperly in asking defendant Blackwell about the incident rather than calling other persons to testify about it.  Defendant Blackwell, as the alleged maker of the statement, was the person in the best position to know whether it had been made.  Defendant denied making the statement under oath. Any argument that he may have testified differently if his counsel had received more information concerning the strength of the government's proof on the issue is insufficient to show a denial of his constitutional rights.  If the defense wished to call additional witnesses on this point, defense counsel could have asked the court or the government to identify the source of the information, and could have called this person or persons as witnesses upon cross-examination.  The defense did not do so, and, in light of defendant Blackwell's denial of the incident, it is difficult to imagine how calling witnesses to contradict his testimony would have furthered the defense.  The fact that the government did not call other witnesses did not deprive the defendants of the right to confront witnesses.

In this case, the only matter which constitutes newly discovered evidence is the <u>Columbus Monthly</u> article containing the statements of the juror concerning the jury deliberations, including the revelation that three jurors allegedly indicated during deliberations that they observed defendant Blackwell mouth the words "I hate you" to his ex-wife.  These statements fall

within the scope of Fed.R.Evid. 606(b), which states:

> **(b) Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

This rule is a codification of the general common law rule that a juror is incompetent to impeach his or her verdict. United States v. Gonzales, 227 F.3d 520, 524 (6th Cir. 2000). As noted by the Supreme Court in Tanner v. United States, 483 U.S. 107, 127 (1987), "long-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry." These concerns include the need for finality to litigation, the need to protect jurors from harassment after a verdict is rendered, and the need to prevent the possible exploitation of disgruntled ex-jurors. Gonzales, 227 F.3d at 527. The only two exceptions to the rule occur when extraneous prejudicial information is improperly brought to the jury's attention, and when outside influence was improperly brought to bear upon any juror.

An extraneous influence on a juror is "one derived from specific knowledge about or a relationship with either the parties or their witnesses." United States v. Herndon, 156 F.3d 629, 636 (6th Cir. 1998)(holding that juror's recollection that he might have

9

had previous business dealings with defendant constituted an extraneous influence). Extraneous influence has been found to exist in the case of: (1) statements made to the jury by a bailiff, Parker v. Gladden, 385 U.S. 363 (1966); (2) a juror's contact with a party during trial, Washington Gas Light Co. v. Connolly, 214 F.2d 254 (D.C.Cir. 1954); (3) a juror in a criminal trial who had previously applied for a job in the district attorney's office, Smith v. Phillips, 455 U.S. 209 (1982); (4) a juror's contact with someone who suggested that the juror could profit by bringing in a verdict for the defendant; Remmer v. United States, 347 U.S. 227 (1954); and the jury's exposure to newspaper articles and media attention, United States v. Thomas, 463 F.2d 1061 (7th Cir. 1972).

Sixth Circuit cases involving extraneous influences include: United States v. Rugiero, 20 F.3d 1387 (6th Cir. 1994)(jurors became aware during deliberations of television broadcast linking defense counsel to organized crime); United States v. Zelinka, 862 F.2d 92 (6th Cir. 1988)(spectator at trial made comments in presence of jurors on courthouse elevator that jurors considered threatening); United States v. Ramos, 861 F.2d 461 (6th Cir. 1988)(wife of juror seen embracing wife of one of the defendants and conversing with defendant and his wife in witness room); United States v. Pennell, 737 F.2d 521 (6th Cir. 1984)(five jurors contacted at home during deliberations by anonymous telephone caller who made threatening statements).

An "outside influence" refers to a factor originating outside of normal courtroom proceedings which influences jury deliberations, such as a statement made by a bailiff to the jury or a threat against a juror. United States v. Jones, 132 F.3d 232,

10

245 (5th Cir. 1998)(citing Fed.R.Evid. 606(b) Advisory Committee Note and Judiciary Committee Note).

Internal influences include such matters as the pressure of one juror on another, juror misunderstanding of court instructions, a verdict achieved through compromise, juror misgivings about the verdict, and juror agreement on a time limit for a decision. United States v. Logan, 250 F.3d 350, 380-381 (6th Cir. 2001)(holding that alleged misconduct consisting of potentially premature deliberations that occurred during the course of the trial constituted a potential internal influence).

In Tanner, 483 U.S. at 118, the Supreme Court provided examples of internal influences, including the behavior of jurors during deliberations, the jurors' ability to hear or comprehend trial testimony, and "physical or mental incompetence of a juror." The Court noted that the "internal processes of the jury" generally constitute internal influences." Id. at 120. Examples of matters which have been found to be strictly within the deliberative process include: (1) evidence of juror intoxication, Tanner, 483 at 125; (2) statements of juror about the deliberations and her feelings, including fact that she did not think that defendant was totally guilty, Gonzales, 227 F.3d at 525-26; and the jury's misunderstanding of the court's jury instructions, United States v. Tines, 70 F.3d 891, 898 (6th Cir. 1995).

In this case, most of the juror's statements quoted in the Columbus Monthly article concern the deliberations of the jurors and their thought processes, and thus they cannot be considered under Rule 606(b). The only issue presented is whether the report that three jurors observed defendant Blackwell mouth the words "I

11

hate you" while Ms. Stephan was on the stand constitutes an internal influence, as opposed to extraneous prejudicial information improperly brought to the jury's attention, or an outside influence.

In Remmer, the Supreme Court held that a trial court, when confronted with an allegation of "any private communication, contact, or tampering, directly or indirectly, with a juror during trial," must hold a hearing to determine the circumstances, the impact of the contact upon the juror, and whether or not the contact was prejudicial. Remmer, 347 U.S. at 229. The Sixth Circuit has held that a Remmer hearing is required "in all cases involving an unauthorized communication with a juror or the jury from an outside source that presents a likelihood of affecting the verdict." United States v. Rigsby, 45 F.3d 120, 123 (6th Cir. 1995). A Remmer hearing is not warranted every time a juror suggests that the jury heard impermissible extraneous information during deliberations. Gonzales, 227 F.3d at 527. Rather, a hearing is required only when there is a colorable claim of extraneous information that presents a likelihood of affecting the verdict. Id.

Further, the need for a Remmer hearing does not arise absent the existence of an outside influence on a juror. United States v. Frost, 125 F.3d 346, 377 (6th Cir. 1997). See Rigsby, 45 F.3d at 125 (finding no external contact with juror warranting hearing where juror told a court functionary that she thought she knew some of the witnesses and asked if this would present a problem); United States v. Griffith, 17 F.3d 865 (6th Cir. 1994)(trial court properly declined to hold hearing because fact that alternate juror who was

12

excused when deliberations began had attempted to discuss case with deputy marshal was found to be internal and within strictures of Rule 606(b)); United States v. Shackelford, 777 F.2d 1141, 1145 (6th Cir. 1985)(upholding trial court's refusal to conduct Remmer hearing where defendant failed to establish that any extraneous influences had been brought to bear on jury, even though a juror had talked with his wife during break in deliberations).

At the Remmer hearing, the defendant must show that an unauthorized contact created actual juror bias, and courts may not presume that a contact was prejudicial.  Id.; United States v. Branham, 97 F.3d 835, 855 (6th Cir. 1996)("The burden rests on the defendants to demonstrate that the alleged juror misconduct prejudiced their defense, and under no circumstance will prejudice be presumed.").

Before they are entitled to a hearing, defendants must present a colorable claim that an external influence occurred.  Here, defendant Blackwell denied under oath at trial that the alleged activity occurred.  If he testified truthfully, then the most that can be established by the evidence is that the jurors were mistaken in their observations.  This would relate to the jurors' own internal mental process, a topic which is shielded from inquiry by Rule 606 (b).  See United States v. Vig, 167 F.3d 443, 450 (8th Cir. 1999)(juror's comments reflecting a misapprehension of the evidence presented was not proper subject of inquiry).

If in fact defendant Blackwell did mouth the statement to his wife during trial, this would not constitute an external or extraneous influence, because it happened in open court and was within the scope of, and addressed by, the judicial process.  In

13

<u>United States v. Rodriquez</u>, 116 F.3d 1225 (8th Cir. 1997), the defendant raised as error the fact that the defendant's failure to testify was discussed during deliberations. The defendant argued that since his failure to testify was not evidence and should not have been considered, it should be considered an "outside influence" about which the jurors should be allowed to testify. *Id*. at 1226-27. The court rejected this argument, noting:

> That Rodriquez did not testify is not a fact the jurors learned through outside contact, communication, or publicity. It did not enter the jury room through an external, prohibited route. It was part of the trial, and was part of the information each juror collected. It should not have been discussed by the jury, and indeed was the subject of a jury instruction to that effect. But it was not "extraneous information," and therefore does not fall within the exception outlined in Rule 606(b).

<u>Id</u>. at 1227. <u>See</u> <u>also</u> <u>United States v. Rutherford</u>, 371 F.3d 634, 640 (9th Cir. 2004)(jurors could not testify about their discussion of defendant's failure to testify because they learned of defendant's failure to testify through their personal observations during trial, not through a prohibited route or improper <u>ex</u> <u>parte</u> contact); <u>United States v. Tran</u>, 122 F.3d 670, 672 (8th Cir. 1997)(defendant's failure to testify not extraneous information because "it was known to the jurors as a result of their presence at the trial, not as a result of something disclosed to them that had not occurred in the courtroom."); <u>United States v. Falsia</u>, 724 F.2d 1339 (9th Cir. 1983)(jurors' statements that they had discussed the absence of a co-defendant and his failure to testify during deliberations held inadmissible under Rule 606(b) because the jurors had learned this information through observation during trial).

In United States v. Reesor, 10 Fed. Appx. 297, 2001 WL 523931 (6th Cir. May 7, 2001), the court held that the district court properly denied a new trial based on evidence that jurors witnessed the fraud defendant disputing his lunch bill in the court cafeteria. The court noted that the extrinsic influences involved were generated by the defendant himself. 10 Fed.Appx. at 305. The court further stated, "To require a mistrial or even a Remmer hearing on the basis of actions taken by the defendant would obviously create a serious potential for mischief. Tanner gives no contrary authority supporting a jury influence claim based on the defendant's own misbehavior during trial, whether in or out of the courtroom." Id.

The information at issue here was information which the jurors allegedly learned as a result of their own observations in open court. The defendant testified concerning the issue during his cross-examination. When the defendant took the stand, he placed his credibility at issue, and the jury was entitled to consider his demeanor in the courtroom in weighing his credibility. See Allen v. Woodford, 395 F.3d 979, 997 (9th Cir. 2005)(holding that prosecutor's comments regarding petitioner's demeanor were permissible because he chose to testify); United States v. Schuler, 813 F.2d 978, 981 n. 3 (9th Cir. 1987)("When a defendant chooses to testify, a jury must necessarily consider the credibility of the defendant. In this circumstance, courtroom demeanor has been allowed as one factor to be taken into consideration."). If, in fact, some of the jurors observed defendant Blackwell mouth the phrase "I hate you" to his wife, and later heard him deny it on the stand, this was internal information learned during the course of

15

the trial which the jurors were entitled to consider. Thus, any further inquiry into the matter is barred by Rule 606(b), and defendants are not entitled to a Remmer hearing.

Finally, in regard to the motions for a new trial filed by defendants Hughes and Stacy on this issue, the court notes that the evidence in question bears on the credibility of defendant Blackwell, not on the credibility of the other defendants. Thus, defendants Hughes and Stacy have not shown how this information could have had any influence on the jury's verdict in their cases. To the extent that they would argue that the evidence had some carry-over effect, the court notes that co-defendants Voss and Jack were acquitted on the strength of their testimony. There is no indication that the jury did not follow this court's instructions to independently evaluate the case against each defendant in deciding the charges against defendants Hughes and Stacy.

For the foregoing reasons, defendants' motions for a new trial based on newly discovered evidence are denied.

Date: December 14, 2005           s\James L. Graham
                                  James L. Graham
                                  United States District Judge